IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANDREA E. SVERSVOLD                                                              PLAINTIFF

vs.                                       CIVIL NO. 04-5313

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Andrea Sversvold, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying her claims for disability insurance benefits (hereinafter "DIB") and supplemental security income (hereinafter "SSI"), under the provisions of Titles II and XVI of the Social Security Act (hereinafter the "Act").

**Procedural Background:**

The applications for DIB and SSI now before this court were filed on January 2, 2003, alleging an onset date of December 1, 2002, due to pain in her left hip, right foot, neck, shoulder, and back; right carpal tunnel syndrome; depression; and, anxiety. (Tr. 56-67, 75, 226-230). An administrative hearing was held on December 4, 2003. (Tr. 242-283). Plaintiff was present and represented by counsel.

At the time of the hearing, plaintiff was forty-two years old and possessed an eleventh grade education. (Tr. 245). Her past relevant work ("PRW") was as a cook, clerk, stocker, cashier, and motel maid/maid supervisor. (Tr. 95, 278).

On June 25, 2004, the Administrative Law Judge (hereinafter "ALJ"), issued a written decision finding that plaintiff's mild osteoarthritis, mild scoliosis, carpal tunnel syndrome, ulnar

neuropathy, panic disorder, generalized anxiety disorder, and depressive disorder constituted severe impairments. (Tr. 25). However, he concluded that they did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 16-17, 24). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity (hereinafter "RFC"), to perform a significant range of light work, limited by her ability to stand or walk up to two hours during an eight-hour workday, limitations in her ability for fine manipulation with her right hand, and a ten percent decrease in the grip strength in her right hand. Further, from a mental perspective, he determined that she was mildly limited regarding her ability to deal with work stresses, but that this limitation could be further reduced via the use of medication. (Tr. 24). Then, utilizing a vocational expert, the ALJ found that, although plaintiff could not perform her PRW, she maintained the ability to work as a food and beverage order clerk, production inspector, and assembler. (Tr. 25).

On October 14, 2004, the Appeals Council declined to review this decision. (Tr. 6-8). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Plaintiff and the Commissioner have both filed appeal briefs, and the case is now ready for decision. (Docs. # 6, 7).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920 (2003).

**Evidence Presented**:

In pertinent part, the medical evidence reveals as follows. On April 14, 2003, plaintiff complained of aching legs. (Tr. 128). She also reported abdominal pain and bloating that began approximately two to three weeks prior to her appointment. (Tr. 129). However, records also indicate that plaintiff had not taken her thyroid medication in two months or more. As such, she was referred to a doctor for further evaluation. (Tr. 129).

This same date, plaintiff underwent a general physical examination with Dr. Randy Conover. (Tr. 131-137). She complained of left hip and back pain, with increasing pain over the past two years. (Tr. 131). Records indicate that she was currently taking Lorazepam. Plaintiff reported an ability to stand for only one hour without repositioning, and also complained of numbness in her hands. On examination, she was noted to have a normal range of motion in all areas. (Tr. 134). She had a mildly positive Tinels sign on the left and a mildly positive Phelans on the left. (Tr. 135). However, plaintiff was unable to hold a pen and write, touch fingertips to palm, and had a ten percent deficit in her grip strength. She also reported that taking Darvocet and Excedrin and using a heating pad lessened her pain level. X-rays revealed mild subchondral sclerosis and mildly decreased joint space in the left hip; mild osteophyte, mild subchondral sclerosis, and decreased joint space at the L5-S1 level; and, a slight scoliosis concave to the left. Dr. Conover diagnosed plaintiff with mild osteoarthritis, mild scoliosis, carpal tunnel syndrome, back muscle strain, mild plantar

fascitis, anxiety, dyslipidemia, hypothyroidism, ulnar neuropathy, and a history of irritable bowel syndrome. (Tr. 137). He then indicated that plaintiff could sit, finger, see, hear, and speak, noting that plaintiff's ability to walk, stand, lift, carry, and handle would be mildly limited secondary to plaintiff's diagnoses. (Tr. 137).

On July 17, 2003, plaintiff underwent a mental status examination with Dr. Scott McCarty. (Tr. 150-154). She was cooperative and pleasant throughout the evaluation, exhibiting tearfulness when discussing her mistreatment by her sister. (Tr. 151). Plaintiff's stream of mental activity was noted to be spontaneous and well-organized. Her affect was euthymic, with no signs of suicidal or homicidal ideations. She denied experiencing hallucinations, obsessions, or unusual powers, but endorsed past instances of paranoia. Plaintiff reported experiencing panic attack symptoms, to include a flushed face, sweating, dizziness, shortness of breath, heart palpitations, and feeling like she was dying. (Tr. 152). She indicated that her last panic attack had occurred on July 11, 2003. As such, Dr. McCarty diagnosed plaintiff with panic disorder without agoraphobia, generalized anxiety disorder, and depressive disorder not otherwise specified. (Tr. 153). He indicated that her global assessment of functioning score ("GAF"), was fifty-five. Further, Dr. McCarty stated that plaintiff's emotional condition was expected to improve somewhat within the next twelve months, if she maintained medication management and resumed outpatient counseling. He could not, however, state whether her physical symptoms would be resolved, deferring that conclusion to a physician. Dr. McCarty did, however, indicate that there was no evidence of malingering or exaggeration on plaintiff's part. (Tr. 154).

Plaintiff denied having problems with activities of daily living. (Tr. 153). She reportedly followed medical advice, and was not currently involved in any dangerous behaviors. Plaintiff

indicated that she could drive, shop for herself, use a checkbook, make change, and perform household chores every other day. (Tr. 153).

On July 26, 2003, plaintiff was treated for difficulty breathing, a burning throat, and a cough, after she reportedly inhaled pool cleaning chemicals. (Tr. 196). A chest x-ray was inconclusive, showing a six millimeter nodular density in the left lung base. (Tr. 193). The doctor noted that this could have reflected the confluence of shadows, but that the presence of a pulmonary nodule could not be excluded. Therefore, he recommended that this x-ray be compared with a previous chest x-ray. Plaintiff was given an Albuterol inhaler to use on an as needed basis, and told to drink water and reduce smoking. (Tr. 195).

On October 27, 2003, plaintiff complained of recurrent lower abdominal pain over the past several months. (Tr. 175). Plaintiff reported that she had been diagnosed with a mass in her right lower quadrant in April 2003. Dr. James Elkins noted that he had performed her hysterectomy in March 1999, and at that time, her right ovary was noted to have been scarred to the lower right side of her pelvic wall. As such, he examined plaintiff and noted some tenderness along the entire cuff. An ultrasound revealed a resolving cyst on the right ovary. For this, Dr. Elkins prescribed Norethindrone Acetate, Darvocet, and Bactrim BS. He also directed her to continue taking the Lorazepam to help her sleep. (Tr. 175).

On February 19, 2004, plaintiff reported shortness of breath. (Tr. 178). As such, she underwent spirometry testing, which was essentially normal. (Tr. 179). There was no significant response to bronchodilator challenge noted. However, Dr. Madhu Kalyan did recommend further evaluation for shortness of breath with methacholine challenge testing to rule out reactive airway disease. (Tr. 179).

On February 22, 2004, plaintiff sought emergency treatment for bloating and abdominal pain. (Tr. 187). An ultrasound of plaintiff's abdomen revealed a two centimeter calcific density in the right half of the pelvis, consistent with phlebolith. (Tr. 185). The possibility of a distal ureteral stone was not excluded. (Tr. 185).

On March 11, 2004, plaintiff again complained of shortness of breath. (Tr. 176). However, an electrocardiogram was normal. (Tr. 177).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff has alleged a variety of disabling impairments, including pain in her left hip, right foot, neck, shoulder, and back; right carpal tunnel syndrome; depression; and, anxiety. Neither plaintiff's testimony nor the objective medical evidence supports plaintiff's allegations.

As outlined above, we note that, during the relevant time period, plaintiff failed to seek medical treatment for any of the aforementioned impairments. *See Forte v. Barnhart*, 377 F.3d 892,

895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Although Dr. Elkins noted that plaintiff mentioned having problems with her hip during his examination of her in December 2002, and stated that plaintiff planned to see a "hip doctor soon," there is no indication in the record that she ever actually sought treatment for this condition. (Tr. 120). Further, while she contends that her failure to seek treatment for these conditions should be excused due to her financial inability to afford treatment, there is no evidence to show that plaintiff ever availed herself or attempted to avail herself of the assistance programs or free services offered to indigent individuals. (Tr. 172). *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). In fact, the record does not indicate that plaintiff even spoke to her treating doctor about the possibility of applying for discounted services. Accordingly, we cannot say that plaintiff's financial situation prevented her from obtaining medical services for her aches and pains.

We also note that, during her general physical examination, plaintiff reported that taking Darvocet and Excedrin and using a heating pad helped to ease her pain. (Tr. 135). As such, her condition was clearly amenable to treatment. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). Further, records indicate that plaintiff did not have a standing prescription for pain medication. *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999)

(infrequent use of prescription drugs supports discrediting complaints). Therefore, we cannot say that she was totally disabled by her alleged impairments.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. On her supplemental interview outlines, plaintiff reported an ability to care for her personal needs, do the laundry, wash the dishes, change the sheets, iron, vacuum/sweep, take out the trash, shop for groceries and clothing, go to the bank and Post Office, prepare four to five meals per week, pay the bills, use a checkbook, count change, drive, read, watch television, listen to the radio, sew and do crafts, canoe, visit friends and relatives, and go to dinner or a movie. (Tr. 69-72, 90-91). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability.

From a mental perspective, we also note that plaintiff contends disability based on depression and anxiety related disorders. While Dr. McCarty diagnosed plaintiff with panic disorder, generalized anxiety disorder, and depressive disorder during a mental status examination, there are no other records during the relevant time period to indicate that plaintiff sought treatment for these conditions. (Tr. 150-154). *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam)(finding failure to seek treatment inconsistent with subjective complaints). Records do reveal that Dr. Elkins had prescribed Lorazepam for her since at least 1999. (Tr. 19). However, aside from Dr. McCarty's evaluation, there is no evidence to indicate that plaintiff ever sought formal mental health treatment. In fact, plaintiff only saw Dr. McCarty at the Commissioner's urging and in conjunction with her application for disability. Although plaintiff did tell Dr. McCarty that she had undergone outpatient counseling in the 1980's due to worry and stress over her husband returning to military service and the birth of her oldest son, this appears to have been situational, as she did not seek continued mental health treatment. (Tr. 19). *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible, and that she was not suffering from a disabling mental impairment.

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform a range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448,

451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, a general physical examination, a mental evaluation, plaintiff's subjective complaints, and her medical records. On April 25, 2003, Dr. Linda Green, a non-examining, consultative physician, completed an RFC assessment. (Tr. 138-149). After reviewing plaintiff's medical records, she concluded that plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, as well as sit, stand, and walk approximately six hours during an eight-hour workday. (Tr. 139). She also noted that plaintiff could not perform activities requiring frequent and repetitive flexing of the left wrist, or gross manipulation with the left hand. (Tr. 139, 141). Dr. Green also limited plaintiff to occasional stooping and crouching. (Tr. 140).

On July 29, 2003, Dr. Dan Donahue, a non-examining, consultative psychologist, completed a psychiatric review technique form. (Tr. 155-169). After reviewing plaintiff's medical records, he diagnosed her with a depressive syndrome, generalized persistent anxiety, and recurrent severe panic attacks. (Tr. 158, 160). Dr. Donahue then concluded that plaintiff had only mild limitations

concerning her activities of daily living, ability to maintain social functioning, and ability to maintain concentration and pace. (Tr. 165). Further, he noted no episodes of decompensation. (Tr. 165). Dr. Donahue also documented that fact that plaintiff had no history of recent formal mental health treatment and, although she was taking a anti-anxiety medication, failed to allege mental impairments at the time she filed her application. (Tr. 167). Accordingly, he was of the opinion that plaintiff's mental impairment was non-severe. (Tr. 167).

In addition to this assessment, the ALJ also considered plaintiff's own admissions concerning her ability to perform various activities. In July 2003, plaintiff denied having problems with activities of daily living. (Tr. 153). She reported an ability to drive, shop for herself, use a checkbook, make change, and perform household chores every other day. (Tr. 153). Further, as previously noted, on her supplemental interview outline, plaintiff also reported an ability to perform a variety of activities that is inconsistent with her claim of disability.

While we are cognizant of the fact that Dr. Conover diagnosed her with mild plantar fascitis, we also note that she told him that her right foot pain had resolved since she was no longer on her feet regularly. As such, we believe that the ALJ's conclusion that plaintiff could walk and/or stand for only two hours during an eight-hour workday is sufficient to account for the mild limitations in walking and standing observed by Dr. Conover. (Tr. 131, 137). Accordingly, given the fact that plaintiff failed to seek consistent medical treatment for her ailments, and that no doctor ever limited her ability to perform physical activities, we cannot say that plaintiff's condition is so limiting as to render her disabled. *See Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997) (holding that a lack of medically ordered restrictions weighs against credibility); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (same). Therefore, we find that substantial evidence supports the ALJ's

determination that plaintiff could perform a significant range of light work, limited by her ability to stand and/or walk up to two hours during an eight-hour workday, problems with fine manipulation with her right hand, a ten percent decrease in the grip strength in her right hand, and mild limitations in her ability to deal with work stresses that could be further reduced via the use of medication. (Tr. 24).

We also find that substantial evidence supports the ALJ's finding that plaintiff could still perform work that exists in the national economy. A VE testified that a person of plaintiff's age and experience, who could perform light work that did not require standing or walking for more than two hours during an eight-hour workday, allowed for a ten percent reduction in grip strength in the right hand, and allowed for mild limitations in dealing with work stress that could be reduced via medication, could perform the following positions: food and beverage order clerk, assembly jobs, and production inspector. (Tr. 279-281). After reviewing the evidence of record, we find that the hypothetical question posed to the vocational expert fully set forth the impairments that the ALJ accepted as true and were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

ENTERED this 3rd day of February 2006.

    /s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE